UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| ROBERTO G LUCIO, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:19-CV-189 |
| | § | |
| FERN AT TENTH LLC, *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

The Court now considers the motion to dismiss[1] filed by Fern at Tenth, LLC; Bert Ogden

Motors, Inc.; Fiesta Nissan, Inc.; and Robert C. Vackar (collectively "Defendants"). Roberto G.

Lucio ("Plaintiff") has not responded to the motion to dismiss and the time for doing so has

passed. The Court also considers the "First Amended Opposed Motion for Leave to File Plaintiff's

First Amended Complaint"[2] (hereafter, "motion for leave to amend") filed by Plaintiff. Defendants

have responded to the motion for leave to amend.[3] After duly considering the record and the

relevant authorities, the Court **GRANTS** Defendants' motion to dismiss and **DENIES** Plaintiff's

motion for leave to amend as follows.

## I.    BACKGROUND

This is an employment discrimination case. Plaintiff, a nine-year employee of Bert Ogden

Motors, Inc. ("Defendant Bert Ogden") alleges he was discriminated against based on his sex

during the latter year of his employment.  A summary of Plaintiff's allegations are as follows:

Plaintiff is a male who was hired on or around May 2009.[4] Plaintiff was initially hired as Sales

---

[1] Dkt. No. 7.
[2] Dkt. No. 18.
[3] Dkt. No. 19.
[4] Dkt. No. 1 p. 4, ¶¶ 13–14.

Manager and later became the Chief Operating Officer ("COO").[5] Plaintiff alleges he "performed well" and "became 'the face' of the company," and "was praised by all personnel of the company."[6] At some point in Plaintiff's employment, although it is unclear from the complaint the exact date of this agreement, Plaintiff alleges that Robert C. Vackar ("Defendant Vackar"), the owner of Fern at Tenth, LLC and Plaintiff's head supervisor,[7] promised to make Plaintiff a "partner of a dealership (Fiesta Nissan)."[8] Plaintiff alleges he continued his employment in reliance on this promise.[9]

Beginning in the summer of 2017, Plaintiff alleges Natasha del Barrio ("Del Barrio"), Chief Executive Officer ("CEO") of Defendant Bert Ogden[10] "engaged in sexual harassment of Plaintiff on several occasions by way of verbal communications, telephone calls, text messages, and physical interaction."[11] Plaintiff alleges the harassment continued until "the end of that year" and that the interaction was daily.[12] Plaintiff allegedly "felt required to engage in the sexual communication and relationship with Del Barrio due to her position and authority over him."[13] Plaintiff also alleges Defendant Vackar "became aware of the sexual harassment in November 2017, but did not confront Plaintiff about it until November 17, 2017."[14]

According to Plaintiff, shortly thereafter, "Defendant Vackar retaliated against Plaintiff

---

[5] *Id.* ¶ 17.
[6] *Id.* ¶ 18.
[7] *Id.* ¶ 15.
[8] *Id.* at p. 6, ¶ 31. As to the date of Defendant Vackar's promise, Plaintiff's proposed amended complaint specifies only that Defendant Vackar made such promise "[in] 2015." Dkt. No. 18-1 p. 4, ¶ 19.
[9] *Id.*
[10] It is unclear from the allegations in Plaintiff's complaint who employed Del Barrio. Plaintiff merely alleges that Del Barrio was the CEO of "Defendant," but does not clarify which Defendant. Plaintiff's proposed amended complaint clarifies that Del Barrio is employed as the CEO of Defendant Bert Ogden Motors. Dkt. No. 18-1 p. 26, ¶ 95.
[11] *Id.* at pp. 4–5, ¶ 19.
[12] *Id.* Plaintiff removes this portion of the pleading in his proposed amended complaint, stating only that "Del Barrio began pursing (sic) Plaintiff" in August of 2017 and continued, "[over] the next month…" Dkt. No. 18-1 p. 6, ¶¶ 25, 29.
[13] *Id.* at p. 5, ¶ 20.
[14] *Id.* ¶ 21.

and engaged in a series of behavior that continually harassed and threatened Plaintiff."[15] Plaintiff further alleges Defendant Vackar "immediately tried to cover up the events and threatened to terminate Plaintiff's employment,"[16] continuously harassed Plaintiff, and "banned Plaintiff from attending company events."[17] Plaintiff also alleges Defendant Vackar engaged in the following behavior:

> Vackar would follow Plaintiff around, have other employees report to him on Plaintiff's whereabouts and actions, interrogate him on numerous occasions, forbid Plaintiff from communicating with Del Barrio (CEO) for any reason, kicked him out of his office, did not allow Plaintiff to oversee company meetings, did not allow Plaintiff to close the door to the office.[18]

In contrast, Plaintiff alleges Del Barrio was "not threatened or harassed or treated differently for engaging in sexual harassment against Plaintiff."[19] Rather, Plaintiff alleges Del Barrio "became 'the face' of the company," replacing Plaintiff in that position.[20] Further, Del Barrio allegedly threatened Plaintiff with termination if Plaintiff "did not get into [Defendant Vackar's] good graces."[21]

In response, Plaintiff claims he made "several good faith complaints" about this treatment "to no avail."[22] Plaintiff further alleges "Defendant's Owner[23] told Plaintiff he would not be handling this matter through human resources."[24] Instead, Defendant Vackar "ratified the conduct

---

[15] Dkt. No. 1 p. 5, ¶ 21.
[16] *Id.* ¶ 23.
[17] *Id.*
[18] *Id.* at p. 6, ¶ 25.
[19] *Id.* at p. 7, ¶ 32.
[20] *Id.*
[21] *Id.* ¶ 26.
[22] *Id.* ¶ 30. Plaintiff does not specify to whom he made these complaints. Plaintiff removes this statement from his proposed amended complaint and instead alleges in the "Retaliation" section of his proposed amended complaint that "[Defendants' actions] were in retaliation for his complaint of sexual harassment by his immediate supervisor Del Barrio." Dkt. No. 18-1 p. 27, ¶ 100. Again, Plaintiff does not specify to whom he complained.
[23] Plaintiff's complaint does not indicate who "Defendant's Owner" is. From context it appears to be an allegation against Defendant Vackar, who is the owner of Fern at Tenth, LLC and the registered agent of Bert Ogden Motors, Inc.
[24] *Id.* ¶ 29.

of Del Barrio by failing to investigate the situation and failing to take action against her."[25] As a result of this situation the work environment became "intimidating, hostile, humiliating and offensive . . . ultimately leaving Plaintiff no option but to resign."[26]

Plaintiff then filed a "Charge of Discrimination" in which Plaintiff "alleged discrimination in the terms and conditions of [Plaintiff's] employment due to [Plaintiff's] sex, and in retaliation for complaining of sexual harassment by his immediate supervisor."[27] Plaintiff attaches a Right to Sue Letter, dated April 11, 2019.[28] Yet, this charge only includes one Defendant.[29]

Based on these allegations, Plaintiff filed a complaint in this Court on June 2, 2019.[30] Plaintiff now brings claims against Defendants under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et. seq.* based on sex discrimination, a hostile work environment, and retaliation;[31] and a claim against Defendants for intentional infliction of emotional distress.[32] Plaintiff also brings claims against Defendant Vackar for fraudulent inducement, misrepresentation, and promissory estoppel.[33] Plaintiff seeks attorneys' fees and damages.[34]

On July 18, 2019, Defendants filed the instant motion to dismiss all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).[35] Plaintiff has not responded and the time for doing so has passed, rendering Plaintiff unopposed by operation of the Local Rules.[36] Despite Plaintiff's lack of response, Plaintiff did file an amended complaint on August 15, 2019, without

---

[25] *Id.* ¶ 22.
[26] Dkt. No. 1, p. 7, ¶ 33.
[27] *Id.* ¶ 34.
[28] *See* Dkt. No. 1-1 (Notice of Dismissal and Right to File Civil Action).
[29] *Id.* The Right to Sue Letter names only "DEFENDANT FERN AND TENTH LLC."
[30] *See* Dkt. No. 1.
[31] *See id.* at pp. 7–9, ¶¶ 36–42.
[32] *Id.* at pp. 9–10, ¶¶ 44–45.
[33] *Id.* at p. 9, ¶ 43.
[34] *Id.* at pp. 10–11.
[35] Dkt. No. 7.
[36] *See* L.R. 7.2–7.4 of the Local Rules of the Southern District of Texas (a motion is deemed unopposed if the non-movant does not respond within twenty-one days).

filing for leave to amend.[37] Because at that point the time for Plaintiff to file an amended pleading as a matter of course had passed and Plaintiff failed to file a motion requesting leave to amend, the Court struck Plaintiff's amended complaint as improperly filed.[38] Plaintiff then filed a motion requesting leave to amend on September 16, 2019 and attached a proposed amended complaint.[39] On September 20, 2019, Plaintiff filed the instant amended motion for leave to amend.[40] Both motions are now ripe; the Court exercises its discretion to consider the motion for leave to amend concurrently with the motion to dismiss.

## II. ANALYSIS

The Fifth Circuit has held that while the amendment rules are liberal, they "do not require that courts indulge in futile gestures. Where a complaint, as amended, would be subject to dismissal, leave to amend need not be granted."[41] Therefore, because the Court's decision regarding whether to grant Plaintiff leave to amend hinges on whether the proposed amended complaint would be subject to dismissal, the Court first considers Defendants' motion to dismiss. In doing so, the Court also considers Plaintiff's proposed amended complaint in order to determine whether the amended complaint states a claim for relief and whether amendment would be futile. The Court now turns to its analysis.

### a. DEFENDANT'S MOTION TO DISMISS

#### i. Legal Standard

To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to

---

[37] *See* Dkt. No. 14.
[38] *See* Fed. R. Civ. P. 15(a)(1)(B), 15(a)(2).
[39] Dkt. No. 16.
[40] Dkt. No. 18.
[41] *See United States ex rel. Jackson v. Univ. of N. Texas*, 673 F. Appx 384, 388 (5th Cir. 2016) (quoting *DeLoach v. Woodley*, 405 F.2d 496, 496–97 (5th Cir. 1968) (per curiam)); *see also Garcia v. Communities in Sch. of Brazoria Cty., Inc.*, No. CV H-18-4558, 2019 WL 2420079, at *14 (S.D. Tex. June 10, 2019) (allowing dismissal of claims without leave to amend because amendment would be futile).

relief that is plausible on its face."[42] Although this does not require extensive detail, the pleading must contain "more than labels and conclusions" and go beyond "a formulaic recitation of the elements."[43] The Court regards all well-pled facts as true; however conclusory allegations are not entitled to the same presumption of truth.[44] These well-pled facts are viewed in the light most favorable to the plaintiff.[45] The Court may dismiss a complaint if the complaint fails to state a claim upon which relief can be granted on its face, or if the pleading does not assert enough facts to support a plausible claim for relief.[46]

As to any question of state law, this Court, *Erie*-bound, must adhere to grounds of relief authorized by the state law of Texas.[47] Absent a decision by a state's highest tribunal, the decisions by Texas courts of appeals are controlling "unless [the Court] is convinced by other persuasive data that the highest court of the state would decide otherwise."[48]

### ii. Legal Analysis

Defendants argue that Plaintiff's original complaint fails to state any claim upon which relief can be granted. Although Plaintiff has not responded, and thus indicates he is unopposed to Defendants' motion, the Court must nonetheless evaluate Defendants' motion regarding each of Plaintiff's claims. However, before considering the merit of Plaintiff's claims, the Court considers the complaints in general. In both complaints, Plaintiff fails to distinguish amongst the three corporate entities; thus making it difficult to evaluate his claims separately as to each Defendant. Additionally, Plaintiff's amended complaint, over thirty pages in length, fails to set out a "short

---

[42] *In re Katrina*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007), cert. denied, 552 U.S. 1182 (2008) (internal quotations omitted).
[43] *See Twombly*, 550 U.S. at 555.
[44] *See id.* at 678–79; *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005).
[45] *Id.*
[46] *See In re Katrina*, 495 F.3d at 205.
[47] *See Exxon Co. U.S.A, Div. of Exxon Corp. v. Banque De Paris Et Des Pays-Bas,* 889 F.2d 674, 675 (5th Cir. 1989); *see also Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (U.S. 1938).
[48] *Exxon,* 889 F.2d at 675 (quoting *West v. AT&T,* 311 U.S. 223, 237 (1940)) (internal quotation marks omitted).

and plain statement of the claim showing that [Plaintiff] is entitled to. . . relief."[49] In fact, much of the complaint is subject to being stricken pursuant to Federal Rule of Civil Procedure 12(f).[50] Nonetheless, the Court considers the entirety of the complaints in evaluating the separate causes of action. The Court will first consider Plaintiff's claims made against Defendant Vackar[51] individually and then move to Plaintiff's claims against all Defendants.

### 1. *Claims against Defendant Vacker*

Plaintiff makes three claims against Defendant Vackar: (1) fraudulent inducement; (2) misrepresentation; and (3) promissory estoppel.[52] Defendants argue that Plaintiff's allegations fail to state a claim upon which relief can be granted for any of these causes of action.[53] Although the Court relies upon the allegations in Plaintiff's live pleading, the Court also considers the allegations in Plaintiff's proposed amended complaint and finds the allegations therein provide no support for these claims. The Court's reasoning follows.

### a. *Fraudulent Inducement*

Plaintiff brings claims for fraudulent inducement, misrepresentation, and promissory estoppel, but does not differentiate among these three claims. To prevail on a fraudulent inducement claim a plaintiff must prove: (1) the defendant made a material misrepresentation that was false; (2) the defendant knew it was false when made or made it recklessly as a positive assertion without any knowledge of its truth; (3) defendant intended the plaintiff to act upon the representation; and (4) plaintiff actually and justifiably relied on the misrepresentation and suffered injury.[54] However, "[f]raudulent inducement arises only in the context of a contract,

---

[49] Fed. R. Civ. P. 8(c)(2).
[50] *See* Dkt. No. 18-1 p. 21, ¶ 78; Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter").
[51] *See* Dkt. No. 7 pp. 7–17.
[52] Dkt. No. 1 p. 9, ¶ 43.
[53] Dkt. No. 7.
[54] *Esty v. Beal Bank S.S.B. & CSG Invs.,* 298 S.W.3d 280, 303 (Tex. App.—Dallas 2009).

[thus] the existence of a contract is an essential part of its proof."[55]

A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made.[56] However, "the mere failure to perform a contract is not evidence of fraud."[57] To prevail on a fraud inducement claim the plaintiff must allege the defendant made representations with the intent to deceive and with no intention of performing as represented.[58]

The Court finds Plaintiff's complaint fails to state a claim of fraudulent inducement. Although the factual allegations which form Plaintiff's fraudulent inducement claim are somewhat unclear, the only allegation in the complaint that *could* support such a claim is that Defendant Vackar promised Plaintiff a partnership and/or ownership of a dealership and Plaintiff continued his employment in reliance on this promise; yet, this promise was never performed.[59]

On this basis, Plaintiff fails to state a cognizable claim. In particular, Plaintiff must allege Defendant Vackar knowingly made a false statement that Defendant Vackar knew was false when made to show that Defendant Vackar had no intention of performing at the time he promised the partnership. Plaintiff fails to do so here. Additionally, Plaintiff provides no details regarding how or when the partnership/ownership promise was made; nor does Plaintiff provide the time frame in which performance was supposed to occur. Thus, it is impossible to find that Defendant Vackar's statement meets the first and second elements.

Second, even if Plaintiff had alleged sufficient facts to support the first, second, and third elements, Plaintiff wholly fails to allege any facts supporting the fourth element. Plaintiff states only that he "continued" employment. Actual reliance requires something more than continuing

---

[55] *Anderson v. Durant,* 550 S.W.3d 605, 614 (Tex. 2018).
[56] *Schindler v. Austwell Farmers Coop.,* 841 S.W.2d 853, 854 (Tex. 1992).
[57] *Formosa Plastics Corp. United States*, 960 S.W.2d at 48.
[58] *Id.*
[59] Dkt. No. 1 p. 6, ¶ 31; p. 9, ¶ 43.

employment. Thus, Plaintiff also fails to meet the fourth element.

Accordingly, Plaintiff fails to allege all elements of a claim of fraudulent inducement. The Court thus **DISMISSES WITH PREJUDICE** Plaintiff's claim of fraudulent inducement**.**

### b. *Misrepresentation*

Plaintiff lists "misrepresentation," but provides no additional details regarding this claim and relies on the same legal and factual allegations as those regarding Plaintiff's claim of fraudulent inducement, explained above.[60] As misrepresentation in and of itself is not a cause of action, the Court construes this as a claim of negligent misrepresentation.

The elements of negligent misrepresentation are: (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.[61] "The sort of 'false information' contemplated in a negligent misrepresentation case is a misstatement of existing fact, not a promise of future conduct."[62] A conditional promise of future employment is insufficient as a matter of law to establish negligent misrepresentation.[63]

As noted above, Plaintiff fails to allege any false statement by Defendant Vackar that could be a misstatement of an existing fact. Plaintiff provides no allegations that Defendant Vackar's alleged promise to make Plaintiff a "partner of a dealership" was a misstatement of facts as they existed when Defendant Vackar made the statement. Such a statement is clearly a promise

---

[60] Dkt. No. 1 p. 9, ¶ 43.
[61] *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).
[62] *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex. App.—Houston [14th Dist.] 1999).
[63] *Airborne Freight Corp. v. C. R. Lee Enters., Inc.*, 847 S.W.2d 289, 298 (Tex. App.—El Paso 1992).

of future conduct, and as such, is insufficient to support a negligent misrepresentation claim.[64]

Based on the foregoing, the Court finds Plaintiff fails to state a claim of negligent misrepresentation and **DISMISSES WITH PREJUDICE** Plaintiff's claim for negligent misrepresentation.

### c. *Promissory Estoppel*

The elements of promissory estoppel are: (1) a promise, (2) foreseeability of reliance by the promisor, (3) substantial reliance by the promisee to its detriment; and (4) enforcing the promise is necessary to avoid injustice.[65] Promissory estoppel, however, may not be used to create a contract that does not otherwise exist.[66] Similarly, "[p]romissory estoppel does not operate to create liability where it does not otherwise exist."[67] The purpose of the doctrine of promissory estoppel is to "estop[] a promisor from denying the enforceability of the promise."[68]

Reliance on the promise must be reasonable.[69] In order for reliance on a promise regarding the modification of at-will employment to be reasonable, the terms of the promise must be "definite" and "sufficiently certain."[70] In Texas, the general rule is that employment at-will is terminable at any time by either party, with or without cause, absent an express agreement to the contrary.[71]

Here, as noted above Plaintiff fails to state allegations sufficient to find that Defendant Vackar's promise to Plaintiff constituted a contract. Plaintiff's allegation is simply that Defendant

---

[64] *Allied Vista, Inc.*, 987 S.W.2d at 141.
[65] *Sipco Servs. Marine, Inc. v. Wyatt Field Serv. Co.*, 857 S.W.2d 602, 605 (Tex. App.—Houston [1st Dist.] 1993).
[66] *Ezennia v. Wells Fargo Bank, N.A.*, No. H-10-5004, 2012 U.S. Dist. LEXIS 161779, at *11 (S.D. Tex. Nov. 13, 2012)
[67] *Allied Vista, Inc.*, 987 S.W.2d at 141.
[68] *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936 (Tex. 1972).
[69] *Douglas v. Aztec Petroleum Corp.*, 695 S.W.2d 312, 317 (Tex. App.—Tyler 1985).
[70] *Gilmartin v. KVTV-Channel 13*, 985 S.W.2d 553, 599 (Tex. App.—San Antonio 1998).
[71] *Allied Vista, Inc.*, 987 S.W.2d at 142. Texas courts have recognized a very narrow exception to this rule regarding an employee's refusal to perform an illegal act. *See, e.g., Safeshred, Inc. v. Martinez*, 365 S.W.3d 655, 659 (Tex. 2012). Plaintiff's complaint does not give rise to any consideration of this exception.

Vackar promised Plaintiff "to be partner" of the Fiesta Nissan dealership.[72] Plaintiff alleges that, "[the] consideration communicated between the parties was that Defendant Vackar would front the money for the purchase of the dealership, if Plaintiff promised to be at and work as the Executive Manager of the Nissan Fiesta dealership, Plaintiff would have to payback Defendant Vackar over time, but would receive a 20% interest in the dealership."[73] Plaintiff says nothing whatsoever about how he acted in reliance on this promise, other than by continuing his employment. In sum, Plaintiff fails to allege there was an express agreement that changed the terms of his at-will employment and that this reliance on such an agreement was reasonable.[74]

Accordingly, Plaintiff fails to state a claim of promissory estoppel. The Court **DISMISSES WITH PREJUDICE** this claim. The Court now turns to Defendants' motion to dismiss Plaintiff's remaining claims.

### 2. *Claims Against All Defendants*

The Court now considers Defendants' motion to dismiss as to Plaintiff's claims against all Defendants.[75] The Court additionally considers Plaintiff's proposed amended complaint.[76] In both Plaintiff's live complaint and Plaintiff's proposed amended complaint, Plaintiff brings claims under Title VII and an additional claim of intentional infliction of emotional distress against Defendants.[77]

Upon review, the Court determines that Defendants' motion to dismiss should be granted in relation to Plaintiff's claims under Title VII and Plaintiff's claim for intentional infliction of emotional distress. The Court's reasoning is as follows.

---

[72] Dkt. No. 1, ¶ 31.
[73] Dkt. No. 18-1 p. 5, ¶ 20.
[74] *See Allied Vista, Inc.*, 987 S.W.2d at 142.
[75] *See* Dkt. No. 7 pp. 7–17.
[76] Dkt. No. 18-1.
[77] *See* Dkt. No. 1.

### a. Title VII Claims

The Court determines that Defendants' motion should be granted as to each of these claims. Defendants seek dismissal of all Plaintiff's Title VII claims, including "discrimination," hostile work environment, and sexual harassment.[78] Plaintiff's complaint does not explicitly set out a claim for sex discrimination under Title VII; rather, Plaintiff's complaint contains the following:

> The actions of Defendants' agents and employees were in violation of Federal law under Title VII of the Civil Rights Act of 1964, as amended, in that Plaintiff [] was constructively discharged from his position as C.O.O. and suffered discrimination in terms, conditions, and privileges of his employment due to his sex.[79]

Although Plaintiff's complaint has no specific heading titled "sex discrimination," the Court finds that Plaintiff, with this abovementioned sentence, raises a claim of sex discrimination under Title VII.[80] Thus, the Court finds that Plaintiff's complaint raises three claims under Title VII: sex discrimination, hostile work environment, and retaliation. The Court interprets Defendants' request for dismissal of the "discrimination" claim as addressing Plaintiff's apparent sex discrimination claim.[81]

Title VII of the Civil Rights Act of 1964 provides that "[i]t shall be an unlawful employment practice for an employer. . . .to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of. . . .[sex]."[82] Title VII claims are analyzed using the *McDonnell Douglas* burden-shifting framework, which first

---

[78] *See* Dkt. No. 7.

[79] Dkt. No. 1 pp. 7–8, ¶ 37.

[80] The Court finds it necessary to clarify Plaintiff's claims because, even in his proposed amended complaint, Plaintiff often conflates his Title VII claims to the point that the Court is unable to decipher them. For example, within the heading for his hostile work environment claim, Plaintiff alleges "that the acts alleged herein created a hostile work environment based upon discrimination and retaliation for which [Plaintiff] is entitled to an award of all damages to which [Plaintiff] is entitled in an amount to be proven at trial." Dkt. No. 18-1 p. 27, ¶ 98. It appears that Plaintiff argues his sex discrimination and retaliation claims are the basis for his hostile work environment claim.

[81] Dkt. No. 7 p. 12, ¶¶ 6.1–6.2.

[82] 78 Stat. 255, as amended, 42 U.S.C. § 2000e–2(a)(1).

requires the plaintiff to establish a prima facie case of discrimination.[83] However, the *McDonnell Douglas* framework is an evidentiary standard, not a rigid pleading requirement.[84] Plaintiff's claims are sufficient if Plaintiff raises a claim for relief under Title VII that is "plausible on its face."[85]

### i. Sex Discrimination

A plaintiff establishes a prima facie case of sex discrimination by showing that he: (1) belongs to a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was replaced by a similarly qualified person who was not a member of his protected group, or was treated less favorably than other similarly situated employees outside the protected group.[86] However, for purposes of surviving a Rule 12(b)(6) motion to dismiss, it is not necessary for a plaintiff to plead a prima facie case of discrimination.[87] A plaintiff need only plead enough facts to plausibly suggest that his employer discriminated against him due to his membership in a protected group.[88] Thus, the ultimate question in a Title VII sex discrimination case is whether the defendant intentionally discriminated against the plaintiff "because of because of. . . .[sex]."[89]

---

[83] *See generally McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973) (laying out burden-shifting analysis); *Wheat v. Florida Par. Juvenile Justice Com'n,* 811 F.3d 702, 705 (5th Cir. 2016) ("claims under both Title VII and the FMLA . . . are analyzed under the *McDonnell Douglas* burden-shifting framework."; *Long v. Eastfield Coll.,* 88 F.3d 300, 304 (5th Cir. 1996) ("the burden-shifting structure applicable to Title VII disparate treatment cases, as set forth in *McDonnell Douglas Corp. v. Green*, . . . is also applicable to Title VII unlawful retaliation cases.").

[84] *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 506–07 (2002).

[85] *See Twombly*, 550 U.S. at 570.

[86] *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

[87] *Swierkiewicz v. Sorema,* 534 U.S. 506, 511; *see also Johnson v. Johnson,* 385 F.3d 503, 531 (5th Cir. 2004).

[88] *Gallentine v. Hous. Auth. of City of Port Arthur, Tex.,* 919 F. Supp. 2d 787, 804 (E.D. Tex. 2013) (citing *Johnson v. Alice Indep. Sch. Dist.*, No. C–12–170, 2012 WL 4068678, at *3 (S.D.Tex. Sept. 14, 2012); *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955; *Swierkiewicz*, 534 U.S. at 511–12); *see also Davis v. Texas Health & Human Servs. Comm'n,* 761 F. App'x 451, 454 (5th Cir. 2019) (holding that a plaintiff "must plead sufficient facts on all of the ultimate elements of the claim to make [his] case plausible").

[89] *Roberts v. Lubrizol Corp.*, No. CV 4:12-3272, 2013 WL 12099843, at *5 (S.D. Tex. June 28, 2013) (citing *Johnson v. Louisiana*, 351 F.3d 616, 622 (5th Cir. 2003)).

Since Plaintiff has not responded to Defendants' motion to dismiss, the Court is left to discern the specifics of Plaintiff's sex discrimination claim. Plaintiff alleges he was "constructively discharged from his position as C.O.O. and suffered discrimination in terms, conditions, and privileges of his employment due to his sex."[90] Plaintiff also alleges that "Defendant Bert Ogden's CEO Del Barrio, and various other named employees were Cat's Paws[91] for Defendant Robert Vackar by perpetrating continuous harassment, verbal abuse, threats, and false allegations, treating Plaintiff differently solely based on his sex as instructed by Defendant Robert Vackar to attempt to force Plaintiff to quit, or to establish a pretext for his termination."[92] Plaintiff alleges that Del Barrio instructed him on two occasions to, "be the 'man' again" and "'man up'" when it came to dealing with the conflict between Plaintiff and Defendant Vackar.[93] Plaintiff also alleges that following Defendant Vackar's discovery of Plaintiff's relationship with Del Barrio while Del Barrio was still married, Defendant Vackar "told Plaintiff if he had any closed door meetings with any other female employee at other locations he would be fired."[94] Plaintiff also alleges that Defendant Vackar began allowing Del Barrio, a female CEO serving as Plaintiff's supervisor, to complete job duties formerly belonging to Plaintiff.[95] Defendants argue in their motion to dismiss that Plaintiff fails to make out a prima facie case for sex discrimination because Plaintiff "does not come close to meeting the pleading standards under *Twombly* or *Iqbal*," and "generally names each of the corporate entities as defendants yet makes no specific allegations against any of them."[96]

---

[90] Dkt. No. 1 pp. 7–8, ¶ 37.
[91] Generally, a "Cat's Paw" theory goes to the causal connection between the adverse employment action taken by the decisionmaker and the discriminatory animus of another. *See Zamora v. City of Houston,* 798 F.3d 326, 331 (5th Cir. 2015).
[92] Dkt. No. 18-1 p. 26, ¶ 95.
[93] *Id.* at p. 20, ¶ 73; p. 24, ¶ 85.
[94] *Id.* at p. 9.
[95] *Id.* at pp. 20–21, ¶ 76.
[96] Dkt. No. 7 p. 12, ¶ 6.1.

To the extent Plaintiff argues these facts plausibly suggest that his employer discriminated against him because of his sex, the Court disagrees. The Court first notes that the gist of Plaintiff's complaint appears to be that Defendant Vackar believed Plaintiff was having an inappropriate relationship with Del Barrio,[97] the CEO of Defendant Bert Ogden and Plaintiff's supervisor.[98] Defendant Vackar then set out to stop that relationship. The manner in which this was done is the crux of Plaintiff's claim of harassment. While it is undisputed that Plaintiff is a male and Del Barrio a female, nothing in the complaint suggests that Defendant Vackar's conduct was based on Plaintiff's status as a male versus Del Barrio's status as the CEO. In fact, the complaint suggests that Defendant Vackar frowned on other workplace relationships and was equally harsh on females engaged in such.[99] While Plaintiff's gender (male) may be sufficient to establish status in a protected class, Plaintiff alleges no facts establishing the foundation of a Title VII sex discrimination claim:[100] that he was constructively discharged because he is a male. Plaintiff himself appears to suggest that the "continuous harassment, verbal abuse, threats, and false allegations"[101] experienced by Plaintiff was the result of "[Defendant Vackar becoming] aware of the inappropriate relationship between Del Barrio and Plaintiff."[102] There is nothing in the record to suggest that Defendant Vackar or Del Barrio, as an employee of Defendant Bert Ogden, harassed, abused, threatened, made false allegations against, or constructively discharged Plaintiff because Plaintiff is a male. While Defendants may have committed these actions against

---

[97] Dkt. No. 18-1 p. 7, ¶ 30.

[98] *See id.* at p. 26, ¶ 95.

[99] *See* Dkt. No. 18-1 p. 21, ¶ 78 "Green referenced the time she had a relationship with a previous employee Ever Torres and how Defendant Vackar was so cruel to Green and loathed the sight of her."

[100] *See Roberts*, No. CV 4:12-3272, 2013 WL 12099843, at *5 (S.D. Tex. June 28, 2013) (citing Johnson v. Louisiana, 351 F.3d 616, 622 (5th Cir. 2003)). Yet, the instant case is unlike *Roberts*, where a female plaintiff alleged that she was placed in a unit that traditionally excluded women, during her tenure she was ignored and ostracized by her male colleagues, she complained about this mistreatment, but her complaints were ignored, and then she was terminated. In *Roberts*, the Court held that on these facts, plaintiff plausibly suggested that she was subject to an adverse employment action because of her sex. *See id.* at *6.

[101] Dkt. No. 18-1 p. 26, ¶ 95.

[102] *See id.* at p. 7, ¶ 30.

Plaintiff, Plaintiff does not sufficiently allege that they did so because of Plaintiff's sex. Rather, the facts reflect a conflict because of a workplace relationship. The fact that Del Barrio may not have been similarly situated is not dispositive, as she was the CEO, therefore not similarly situated.

Accordingly, Plaintiff fails to allege sufficient facts to support a claim of Title VII sex discrimination and the Court **DISMISSES WITH PREJUDICE** this claim. The Court now turns to Plaintiff's remaining Title VII claims.

### ii. Hostile Work Environment

In order to maintain a Title VII claim for a hostile work environment based on sexual harassment by a supervisor, a plaintiff must prove: (1) he belongs to a protected group; (2) he was subject to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) the harassment complained of affected a "'term, condition or privilege of employment,'" i.e., must be "sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment."[103] Courts look to the totality of the circumstances to determine whether conduct is severe or pervasive.[104] The following factors are relevant: the frequency and severity of the conduct, whether the conduct is physically threatening or humiliating, rather than a mere offensive utterance; and whether it unreasonably interferes with a plaintiff's work performance.[105] The conduct must be both "'objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so.'"[106] Plaintiff does not argue that he has fulfilled the specific elements of a

---

[103] *Watts v. Kroger Co.,* 170 F.3d 505, 509 (5th Cir. 1999) (quoting *Jones v. Flagship International*, 793 F.2d 714, 719–720 (5th Cir. 1986).

[104] *Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 330 (5th Cir. 2009) (citing *Lauderdale v. Tex. Dept of Criminal Justice, Institutional Div.*, 512 F.3d 157, 163 (5th Cir. 2007)).

[105] *Stewart*, 586 F.3d 321 at 330 (citing *Harvill v. Westward Communications*, LLC, 433 F.3d 428, 434 (5th Cir.2005)).

[106] *Id.* (quoting *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999)).

hostile work environment claim, therefore the Court will again consider whether Plaintiff alleges facts sufficient to plausibly suggest that his supervisor sexually harassed him to the point of creating a hostile work environment.[107]

Plaintiff alleges that "Defendants, by and through their agents and/or employees subjected him to severe and pervasive harassment [and] sexual harassment. . . ."[108] Plaintiff's hostile work environment claim appears to center on his relationship with Del Barrio, his immediate supervisor.[109] Plaintiff alleges that his relationship with Del Barrio progressed from requesting marriage advice to, "inappropriate advances on Plaintiff verbally in [Del Barrio's] office," with Del Barrio allegedly stating, "How could any woman let you go. . . .," "You're the perfect man," and "Did you think I was kidding? You are the perfect man."[110] Following these statements, Plaintiff alleges that he "experienced text messages and verbal advances from Del Barrio, as well as deeply personal information regarding physical abuse in her marriage as a result of her husband."[111] Finally, Plaintiff alleges he "felt he was required to engage in the sexual communication and relationship with Del Barrio due to her position and authority over him in order to keep his job."[112]

The Court finds Plaintiff's allegations insufficient to support a claim that his supervisor sexually harassed him to the point of creating a hostile work environment. Even considering the additional facts provided in the proposed amended complaint, Del Barrio's conduct, while

---

[107] See Twombly, 550 U.S. at 570.

[108] Dkt. No. 18-1 p. 2, ¶ 3.

[109] See id. ¶ 100. In the hostile work environment section of his complaint, Plaintiff does not explicitly state that Del Barrio allegedly sexually harassed him to the point of creating a hostile work environment. Rather, Plaintiff alleges in his retaliation headings that he was retaliated against for his "complaint of sexual harassment by his immediate supervisor Del Bario. . . ." Thus, the Court can only assume that when Plaintiff alleges that "Defendants" sexually harassed him in on page 2, paragraph 3 of the proposed amended complaint, Plaintiff makes those allegations against Del Barrio, as an agent of Defendant Bert Ogden. See id. at p. 2, ¶ 3.

[110] Id. at p. 6, ¶¶ 27–28.

[111] Id. ¶ 29.

[112] Id. at p. 7, ¶ 30.

inappropriate, is not severe or pervasive as to give rise to a hostile work environment claim. Del Barrio's statements did not occur on a regular basis or for a long duration, were not physically threatening or humiliating, and were not hostile or abusive as to make them objectively offensive to a reasonable person.[113] Moreover, Plaintiff does not allege any facts relevant to the nature of the "sexual communication and relationship"[114] between Plaintiff and Del Barrio that he felt he was required to engage in. Plaintiff only states that Del Barrio discussed her marriage with the Plaintiff and made "verbal advances" towards the Plaintiff over the course of one month.[115] The only verbal advances Plaintiff details is Del Barrio allegedly referring to him as "the perfect man."[116] Quite simply, Plaintiff fails to allege sufficient facts proving that Del Barrio engaged in severe and pervasive conduct, thus creating a hostile work environment.

The other conduct of which plaintiff complains of, that of Defendant Vackar and other employees, was not sexual in nature. While such conduct may have created a hostile work environment, Title VII is not designed to protect employees from any and all harsh treatment in the workplace.[117]

Accordingly, Plaintiff fails to allege sufficient facts to support a hostile work environment

---

[113] *Stewart*, 586 F.3d 321 at 330 (quoting *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999)). *See id.* at 330 (holding that the plaintiff's supervisor's statements that (1) he and the plaintiff should be "sweet" to each other and that (2) he loved the plaintiff approximately six times over the course of about one month, "did not create a hostile work environment because they were not severe, physically threatening, or humiliating; at most, they were unwanted and offensive." The Court held that, "[this] is not the kind of conduct that would interfere unreasonably with a reasonable person's work performance or destroy her opportunity to succeed in the workplace"). *See also Lauderdale v. Texas Dep't of Criminal Justice, Institutional Div.,* 512 F.3d 157, 164 (5th Cir. 2007) (holding that, considering the totality of the circumstances, a supervisor's conduct was severe and pervasive as to create a hostile work environment after the supervisor allegedly called plaintiff ten to fifteen times a night for almost four months, with some calls containing sexual overtones, invited plaintiff to "snuggle" in Las Vegas, physically pulled the plaintiff close to him, and repeatedly requested to get coffee with the plaintiff after work).
[114] Dkt. No. 18-1 p. 7, ¶ 30.
[115] *See id.* at p. 6, ¶ 29. "Over the next month, Plaintiff experienced text messages and verbal advances from Del Barrio, as well as deeply personal information regarding physical abuse in her marriage as a result of her husband." In contrast, in Plaintiff's original complaint, Plaintiff alleges, "the harassment began in the summer of 2017 and continued until the end of that year. The interaction was daily." Dkt. No. 1 p. 5, ¶ 19. Yet, in both the original complaint and the proposed amended complaint, Plaintiff fails to allege what this "daily" harassment consisted of.
[116] *Id.* at p. 6, ¶¶ 27–28.
[117] *Reine v. Honeywell Int'l Inc.*, 362 F. App'x 395 (5th Cir. 2010).

claim under Title VII, and the Court **DISMISSES WITH PREJUDICE**. The Court now turns to Plaintiff's remaining Title VII retaliation claim.

### iii.   Retaliation

To state a prima facie case of retaliation, Plaintiff must show: (1) that he engaged in activity protected by Title VII; (2) that he suffered an adverse employment action; and (3) that a causal connection exists between the protected activity and the adverse employment action.[118] A plaintiff engages in activity protected by Title VII if he (1) opposed any practice made an unlawful employment practice by Title VII or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.[119] In the context of a Title VII retaliation claim, "adverse employment actions include 'only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating.'"[120] An employee's constructive discharge constitutes an ultimate employment decision.[121] Thus at this stage, a plaintiff must allege facts sufficient to show that after he engaged in a protected activity under Title VII, his employer retaliated by taking an adverse employment action against him.[122]

Plaintiff alleges that, "[the] actions of Defendant Robert Vackar, his cat's paws, and Defendant Bert Ogden's agent and employees against Plaintiff were in retaliation for his complaint of sexual harassment by his immediate supervisor Del Barrio, and for his multiple complaints to Defendant Robert Vackar and other executive staff regarding Defendant Vackar's disparaging, harassing, isolating and discriminatory conduct as compared to his co-worker Del Barrio."[123] Plaintiff alleges that after Defendant Vackar "became aware of the inappropriate relationship

---

[118] *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000).
[119] *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (citing 42 U.S.C. § 2000e–3(a)).
[120] *Roberts v. Lubrizol Corp.,* No. 4:12-3272, 2013 U.S. Dist. LEXIS 200019, at *14 (S.D. Tex. June 28, 2013) (quoting *McCoy*, 492 F.3d at 559).
[121] *Windham v. Cardinal Health, Inc.*, No. CIVA504CV262-DCBJCS, 2006 WL 51185, at *6 (S.D. Miss. Jan. 9, 2006) (citing *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 439–40 (5th Cir. 2005).
[122] *See Twombly*, 550 U.S. at 570.
[123] Dkt. No. 18-1 p. 27, ¶ 100.

between Del Barrio and Plaintiff,"[124] Defendant Vackar stripped away Plaintiff's job duties,[125] instructed fellow employees to "interrogate" Plaintiff, [126] did not allow Plaintiff to work out of or conduct meetings in Plaintiff's office,[127] and barred Plaintiff from attending "public events on behalf of the dealerships."[128] In contrast, Plaintiff alleges Defendant Vackar made Del Barrio, "the "face" of the dealerships at these events, and stated that he did not want Plaintiff around her.[129] Plaintiff further alleges Defendant Vackar stated that any manager's meetings "would be Del Barrio's and she would be the one doing all the talking."[130]

The Court finds that Plaintiff fails to state a claim of retaliation in violation of Title VII. While Plaintiff does allege he was constructively discharged,[131] which constitutes an ultimate employment action for the purposes of a retaliation claim, Plaintiff fails to allege that he engaged in any protected activity. Plaintiff does not include any facts to even suggest that he opposed an employment practice made unlawful by Title VII or that he made any sort of complaint under Title VII while employed by Defendants. Plaintiff's original complaint indicates Plaintiff made "several good faith complaints" regarding Defendant Vackar's conduct "to no avail,"[132] but Plaintiff does not detail the nature or timing of these complaints, or to whom they were made.

In the proposed amended complaint, Plaintiff also attempts to obfuscate his complaints about Defendant Vackar with complaints of Del Barrio: "After Plaintiff Lucio's complaint, Defendant Robert Vackar and Defendant Bert Ogden's named employees began threatening his job, and treated Plaintiff differently than the other similarly situated employees, CEO Del Barrio, because of

---

[124] *See id.* at p. 7, ¶ 30.
[125] *See id.* at p. 11, ¶ 32.
[126] *Id.* at pp. 18–19, ¶ 70.
[127] *Id.* at p. 9, ¶ 40.
[128] *Id.* at p. 16, ¶ 61.
[129] *See id.*
[130] *See id.*
[131] Dkt. No. 1 pp. 7–8, ¶ 37.
[132] *Id.* ¶ 30.

the Plaintiff's complaint to and discovery by Defendant Robert Vackar."[133] This allegation is insufficient to prove Plaintiff complained of conduct that violated Title VII, as Plaintiff never claims he complained of Del Barrio's conduct. Plaintiff also does not include the date he was constructively discharged by his employer, making it impossible to determine whether Plaintiff made his Texas Workforce Commission charge while still employed. Further, this Court has found that Del Barrio's conduct did not violate Title VII, so Plaintiff's complaints as to her actions are not protected activities under Title VII.

If anything, with this statement Plaintiff admits that Defendant Vackar's discovery of Plaintiff's relationship with Del Barrio influenced Defendant Vackar's treatment of Plaintiff. This suggests that Defendant Vackar did not retaliate against Plaintiff for any complaint related to Title VII. Rather, Defendant Vackar's conduct resulted from learning of the relationship between two of his senior level executives, one of which was married. On these facts, Plaintiff has failed to plausibly suggest that Defendants engaged in retaliation against him in violation of Title VII.

Accordingly, Plaintiff fails to allege sufficient facts to support a retaliation claim under Title VII, and this claim is **DISMISSED WITH PREJUDICE**. The Court now turns to Plaintiff's remaining claim against Defendants, intentional infliction of emotional distress.

### b. *Intentional Infliction of Emotional Distress*

Under Texas law, four factors must be met in establishing a claim for intentional infliction of emotional distress: (1) defendant acted intentionally or recklessly; (2) defendant's conduct was extreme and outrageous; (3) defendant's actions caused plaintiff emotional distress; and (4) plaintiff's emotional distress was severe.[134] Mere insults, indignities, threats, annoyances and petty oppressions do not rise to the level of extreme and outrageous conduct. Furthermore, the

---

[133] Dkt. No. 18-1 pp. 27–28, ¶ 100.
[134] *Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S. W. 3d 438, 447 (Tex. 2004).

conduct required for an international inflction of emotional distress cause of action in the workplace exists only in the most unusual of circumstances.[135] The conduct at issue must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[136]

Additionally, the tort of intentional infliction of emotional distress is "first and foremost, a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress.[137] "Where the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available."[138] Consequently, when a plaintiff alleges a claim for intentional infliction of emotional distress based on the same facts making up their Title VII, the former is preempted.[139]

The Court finds the facts alleged by Plaintiff do not begin to reach the level of egregiousness that Texas law requires to support such a cause of action[140] Additionally, Plaintiff alleges his tort claim for intentional infliction of emotional distress and Title VII claim arise from identical factual allegations, his intentional infliction of emotional distress claims cannot survive.[141]

### iii. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' motion[142] and Plaintiff's tort of intentional infliction of emotional distress **MUST BE DISMISSED WITH PREJUDICE**.

---

[135] *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 612–13 (Tex. 1999).
[136] *Brewerton v. Dalrymple*, 997 S.W. 2d 212, 216 (Tex. 1999).
[137] *Hoffman-La Roche, Inc.*, 144 S. W.3d at 447.
[138] *Id.*
[139] *Pittman v. Gen. Nutrition Corp.*, No. H-04-3174, 2005 U.S. Dist. LEXIS 36277, at *19 (S.D. Tex. July 13, 2005). *See id.*
[140] *See id.*
[141] *Hoffman-La Roche, Inc.*, 144 S.W.3d at 447.
[142] Dkt. No. 7.

Having dismissed all of Plaintiff's claims, the Court now turns to Plaintiff's motion for leave to amend.

### b. Plaintiff's Motion for Leave to Amend

The Court now considers Plaintiff's motion for leave to amend.[143] The Fifth Circuit has held that while the amendment rules are liberal, they "do not require that courts indulge in futile gestures. Where a complaint, as amended, would be subject to dismissal, leave to amend need not be granted."[144] Because the Court finds, for the aforementioned reasons, that neither Plaintiff's original complaint nor Plaintiff's proposed amended complaint state a claim upon which relief can be granted, the Court also finds amendment would be futile. Nonetheless, the Court now considers the factors relevant to granting leave to amend.

### i. Legal Standard

Rule 15(a)(2) provides that the Court should freely give leave to amend "when justice so requires."[145] The Fifth Circuit has stated that "a district court must possess a 'substantial reason' to deny a request for leave to amend."[146] In determining whether to allow leave to amend a pleading, courts consider the following "warning factors:"[147] whether there was (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of the amendment.[148]

---

[143] Dkt. No. 18.

[144] *See United States ex rel. Jackson v. Univ. of N. Texas*, 673 F. App'x 384, 388 (5th Cir. 2016) (quoting *DeLoach v. Woodley*, 405 F.2d 496, 496–97 (5th Cir. 1968) (per curiam)); *see also Garcia v. Communities in Sch. of Brazoria Cty., Inc.*, No. CV H-18-4558, 2019 WL 2420079, at *14 (S.D. Tex. June 10, 2019) (allowing dismissal of claims without leave to amend because amendment would be futile).

[145] Fed. R. Civ. P. 15(a)(2); *see Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002). (citation omitted) (noting that the language of Rule 15(a) "evinces a bias in favor of granting leave to amend").

[146] *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (quoting *Lyn-Lea Travel Corp.*, 283 F.3d at 286).

[147] *Lozano v. I.S.D.*, No. 7:15-CV-58, 2015 WL 12953108, at *1 (S.D. Tex. May 1, 2015).

[148] *Smith,* 393 F.3d at 595 (citing *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003)).

Absent such factors, the Court should freely grant the requested leave.[149] The decision whether to grant leave to amend lies within the Court's sound discretion.[150]

### ii. Legal Analysis

The Court finds many of the warning factors present. First, Plaintiff demonstrated undue delay in requesting leave to amend. While Rule 15(a) does not limit the time available for permissive amendment, 'at some point, time delay on the part of a plaintiff can be procedurally fatal.'"[151] Where this occurs, "the plaintiff bears the burden of showing the delay to be 'due to oversight, inadvertence, or excusable neglect.'"[152]

First, Plaintiff argues "that his Original Complaint provided sufficient factual allegations to overcome Defendants' Motion to Dismiss."[153] Nonetheless, Plaintiff argues that his failure to amend as a matter of course and respond to Defendant's motion to dismiss were both the result of "inadvertence of counsel regarding the proper procedure in requesting an extension on the deadline to respond to Defendant's Motion to Dismiss."[154] Confusingly, Plaintiff groups his explanation for failure to amend as a matter of course with his explanation for failure to respond to Defendants' motion to dismiss. Plaintiff "sought leave from Defendant's counsel to extend [Plaintiff's] deadline" to respond to the motion to dismiss.[155] Defendants' counsel agreed to a fourteen-day extension,[156] but Plaintiff did not request a continuance from the Court. Plaintiff claims that he "reasonably believed the agreement between the parties [as to the deadline to file the response to the motion to dismiss] would extend the deadline for Plaintiff to amend his

---

[149] *Rosenzweig*, 332 F.3d at 864 (5th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).
[150] *Smith*, 393 F.3d at 595 (quoting *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998)).
[151] *See id.* (quoting *Whitaker v. City of Houston*, 963 F.2d 831, 836 (5th Cir.1992)).
[152] *Id.*
[153] Dkt. No. 18 p. 1.
[154] *Id.* at p. 6.
[155] *Id.* at p. 9, ¶ 8.
[156] *Id.* at p. 6, ¶ 1.

Complaint as 'a matter of course. . .'"[157] Defendants argue that Plaintiff's motion for leave to amend should be denied on the basis that Plaintiff's motion "was unduly delayed without excuse" and amendment of Plaintiff's complaint would be futile.[158]

Here, Plaintiff conflates the deadline for amending as a matter of course pursuant to Rule 15 and the deadline to respond to a motion to dismiss pursuant to Local Rule 7.3.[159] Not only did Plaintiff unreasonably believe that he could seek the permission of Defendants to extend a deadline without this Court's permission, but he also unreasonably believed that Defendants' extension of Plaintiff's motion to dismiss deadline would extend Plaintiff's deadline to amend as a matter of course.[160] This is not the mere inadvertence or excusable neglect referenced in *Smith*;[161] rather, this is a failure on multiple occasions to respect the authority of this Court and the authority of the Federal Rules. At some point, Plaintiff's idea of inadvertence amounts to intentional disregard of the Court's rules and procedures, of which counsel have a duty to be well versed.

Plaintiff also missed multiple opportunities to further the progress of his case and remedy delay of his own making. After missing the deadline to amend as a matter of course,[162] Plaintiff filed his amended complaint without requesting leave and this Court struck that amended

---

[157] *See id.*

[158] Dkt. No. 19 p. 3, ¶ 4; p. 7, ¶¶ 16–18.

[159] Fed. R. Civ. P. 15; L.R. 7.3 ("Opposed motions will be submitted to the judge 21 days from filing without notice from the clerk and without appearance by counsel").

[160] Dkt. No. 18 p. 6.

[161] *Smith,* 393 F.3d at 595 (finding that Smith's inability to receive full discovery from defendant did not excuse his delay in recognizing a potential claim and seeking leave to amend. Smith's motion for leave to amend came during trial, which undoubtedly impacted the District Court's decision to deny Smith's motion for leave to amend. However, the Fifth Circuit found that the District Court did not abuse its discretion to deny Smith's motion for leave to amend because Smith's excuse – that the Defendants failed to complete discovery – was insufficient. Here, in contrast, Plaintiff's excuse is solely the result of his own failure to refer to the Federal and Local Rules.

[162] Fed. R. Civ. P. 15(a). Rule 15(a) provides a party the opportunity to amend a pleading once within 21 days after serving the pleading or, if the pleading requires a responsive pleading, 21 days after service of a responsive pleading or 21 days after service of a Rule 12(b), (e), or (f) motion, whichever is earlier. Defendants filed their Answer and 12(b)(6) motion to dismiss on July 18, 2019. Accordingly, Plaintiff had until August 8, 2019 to amend his complaint as a matter of course.

complaint.[163] Yet, Plaintiff then waited 33 days to properly file his motion for leave to amend, filing it *one day* before the parties' initial pretrial and scheduling conference.[164] After the initial pretrial and scheduling conference, Plaintiff filed an *amended* version of his motion for leave to amend.[165]

In sum, considering the totality of Plaintiff's manifest failures, granting the instant motion for leave to amend would essentially moot many months of progress and confine this case to its preliminary stage. Considering Plaintiff's refusal to comply with the Court's procedures and timely file responses over the course of the last three months, granting Plaintiff's motion for leave to amend would undoubtedly cause undue delay in this case.

Thus, the Court now considers the remaining warning factors. While Plaintiff does not appear to have acted in bad faith, the Court questions dilatory motive, as Plaintiff has offered no explanation for the delay from the striking of the improperly filed complaint to the filing of the motion for leave. As the Court has explained, Plaintiff had multiple opportunities to amend and has failed to take advantage of those opportunities by complying with the Federal Rules. In particular, the Court's order of August 19, 2019 specifically referenced the need to file a motion for leave and set out a roadmap for Plaintiff. Yet, Plaintiff did not bother to seek leave until one month later. This is especially troublesome since Plaintiff attached the same complaint on September 16, 2019[166] that had been improperly filed on August 15, 2019.[167] Obviously, the month delay was not necessary to draft the complaint. Granting Plaintiff's motion for leave to amend would also unduly prejudice Defendants, who like the Court, have patiently awaited a

---

[163] Dkt. No. 15.
[164] Plaintiff filed its first amended complaint on August 15, 2019 and the Court struck the complaint on August 19, 2019. Dkt. Nos. 14–15. Plaintiff then waited to file its motion for leave to amend until September 17, 2019. Dkt. No. 16.
[165] Dkt. No. 18.
[166] Dkt. No. 16-1.
[167] Dkt. No. 14.

response or motion from Plaintiff that moves this case along. Defendants would also be forced to replead their requisite motions.

Finally, granting Plaintiff leave to amend would be futile. It appears, as Defendants have pointed out,[168] that Plaintiff named "FERN AND TENTH LLC" as the sole defendant in its Texas Workforce Commission discrimination charge.[169] Plaintiff attached to his original complaint a right to sue letter for "FERN AND TENTH LLC."[170] Assuming Plaintiff intended this charge to address his claims against Defendant Fern *at* Tenth, Plaintiff did not include Defendant Vackar, Defendant Bert Ogden, or Defendant Fiesta Nissan in the charge. It would be futile to allow Plaintiff to amend his complaint without further proof that he has exhausted his administrative remedies[171] as to these Defendants. As to Defendant Fern at Tenth, it would be futile to allow amendment, not because of the misnomer, but because Plaintiff contends he was employed by Defendant Bert Ogden.[172] Additionally, even considering Plaintiff's complaint as against all Defendants, Plaintiff's allegations of sexual harassment in the amended complaint are simply insufficient. The Court has detailed much of its reasoning in the Motion to Dismiss section. The Court again notes that Plaintiff's only specific allegations are that Del Barrio told him, "How could any woman let you go…," "You're the perfect man," and "Did you think I was

---

[168] Dkt. No. 7 p. 1, ¶ 1.2.

[169] Dkt. No. 1-1 (Exhibit 1). The Texas Workforce Commission charge lists "Fern and Tenth LLC" as the Defendant. Plaintiff lists "Fern at Tenth LLC" as the Defendant. Dkt. No. 1 p. 1.

[170] *Id.*

[171] In *Fort Bend Cty., Texas v. Davis*, the Supreme Court recently held that Title VII's charge-filing requirement is not a jurisdictional requirement, but rather a mandatory processing rule, as "[f]ederal courts exercise jurisdiction over Title VII actions pursuant to 28 U.S.C. § 1331's grant of general federal-question jurisdiction. . ." The Court points out that the following clause in Title VII creates this mandatory rule: "Title VII directs that a 'charge ... shall be filed' with the EEOC [or the state agency that has a worksharing agreement with the EEOC] 'by or on behalf of a person claiming to be aggrieved' within 180 days 'after the alleged unlawful employment practice occur[s].' 42 U.S.C. § 2000e–5(b), (e)(1)." 139 S. Ct. 1843, 1850 (2019). Even where there is not a statutory requirement of exhaustion, the jurisprudential doctrine of exhaustion of administrative remedies controls. *Taylor v. U.S. Treasury Dep't*, 127 F.3d 470, 475 (5th Cir. 1997) (citing *McKart v. United States*, 395 U.S. 185, 193–94, 89 (1969)). Here, Defendants have raised the failure to exhaust administrative remedies in the motion to dismiss. Dkt. No. 7 p. 1, ¶ 1.2.

[172] Dkt. No. 18-1 p. 4, ¶ 17. Plaintiff does make one conclusory statement that all three entities were Plaintiff's employers but provides no other factual details particular to any Defendant as his employer. *See id.* ¶ 16.

kidding? You are the perfect man."[173] These statements are neither severe not sufficiently pervasive to support a claim of sexual harassment. Furthermore, Plaintiff, makes no claim that he engaged in any protected conduct that would support a claim of retaliation. Thus, because the Court finds four out of five warning factors present, leave to amend need not be "freely given."[174]

### iii. Conclusion

In sum, leave to amend is improper for the aforementioned reasons. The Court recognizes many 'substantial reasons'[175] to deny Plaintiff's request for leave to amend and exercises its sound discretion to do so.[176] Thus, the Court **DENIES** Plaintiff's motion for leave to amend.[177]

## III. HOLDING

Based on the foregoing, the Court **GRANTS** Defendants' motion to dismiss[178] in relation to all of Plaintiff's claims and **DISMISSES WITH PREJUDICE** all of Plaintiff's claims. The Court **DENIES** Plaintiff's motion for leave to amend.[179] Accordingly, the Court **CANCELS** the parties' October 9, 2019 status conference.[180] This case is **DISMISSED** in its entirety, with a final judgment to follow.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 8th day of October, 2019.

_____
Micaela Alvarez
United States District Judge

---

[173] *Id.* at p. 6, ¶¶ 27–28.
[174] *Foman,* 371 U.S. 178 at 182.
[175] *See Smith,* 393 F.3d at 595 (quoting *Lyn-Lea Travel Corp.*, 283 F.3d at 286).
[176] *See id.* (quoting *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998)).
[177] Dkt. No. 18.
[178] Dkt. No. 7.
[179] Dkt. No. 18.
[180] Dkt. No. 17.